NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0595n.06

No. 12-6183

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jun 21, 2013*
DEBORAH S. HUNT, Clerk

STANFORD KINSLOW, and DONNA )
KINSLOW, Individually and as Parents and Next )
Friend of WK, a minor, ROY KINSLOW, and )
MARGIE KINSLOW, )
 )
    Plaintiffs-Appellants, )
 )
v. )
 )
FIFTH THIRD BANK, INC., d/b/a FIFTH )
THIRD BANK, )
 )
    Defendant-Appellee. )

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF
KENTUCKY

OPINION

Before:  McKEAGUE and DONALD, Circuit Judges; LAWSON, District Judge.[*]

**David M. Lawson, District Judge.**  The Kinslow family plaintiffs appeal the dismissal of

their lawsuit for abuse of process against defendant Fifth Third Bank for failure to state a claim.  The

district court, applying Kentucky law, held that the plaintiffs failed to allege facts that made out the

two necessary elements of that tort under state law.  We agree and affirm.

I.

The plaintiffs are cattle ranchers who reside in Barren County, Kentucky.  In November 2010,

seventeen-year-old WK sold twelve head of cattle to a company called Eastern Livestock Co., LLC,

_____

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of
Michigan, sitting by designation.

and Roy Kinslow, his grandfather, sold the company seventeen head of cattle. Eastern Livestock paid with two checks totaling approximately $15,000 drawn on its account at Fifth Third Bank. The Bank suspected Eastern Livestock of check kiting and froze its account, and eventually dishonored the checks the Kinslows had deposited and presented for payment. Fifth Third also asserted a first lien on the livestock the Kinslows delivered to Eastern Livestock.

Litigation ensued. Fifth Third struck first, responding to the plaintiffs' demand for reimbursement of the two dishonored checks by suing the Kinslows in Ohio state court for conversion and unjust enrichment. That lawsuit, it appears, was based on past transactions in which WK and his grandfather allegedly sold cattle to Eastern Livestock and were paid with kited funds drawn on Fifth Third accounts. That case was later dismissed for want of personal jurisdiction, since the Kinslows had never stepped foot on Ohio soil or dealt with Fifth Third Bank or Eastern Livestock there. The Kinslows believed that Fifth Third's hardball litigation tactics crossed the line and brought their own action in Kentucky state court for abuse of process. Fifth Third removed the case to federal court and filed a motion to dismiss.

The Kinslows' complaint alleged that WK had obtained a youth loan from the Farm Service Agency to buy cattle, and that when he attempted to repay the loan after selling the cattle to Eastern Livestock, his check bounced because Fifth Third had frozen Eastern Livestock's accounts and did not honor the check Eastern Livestock gave to WK. They alleged that Fifth Third violated Kentucky law by failing to dishonor Eastern Livestock's check within the time allowed by law, and so the

Kinslows made a written demand for compensation for the Bank's conversion and unjust enrichment. The complaint then stated that because Fifth Third filed its lawsuit in an Ohio court, the Kinslows were precluded from pursuing their claims against Fifth Third in a Kentucky court. That tactic, they alleged, was improper and pursued with the intention of "secur[ing]" to Fifth Third "a collateral advantage for which the complaint was not designed nor for which Fifth Third [] was entitled." Compl. ¶ 24.

The complaint also described Fifth Third's improper motive, explaining that the Ohio lawsuit "was filed with the ulterior purpose of attempting to intimidate and coerce Plaintiffs to abandon bringing an action against Fifth Third Bank for their wrongful acts and to secure a release from Plaintiffs, purposes for which the civil action was not legally sanctioned and designed." *Id.* ¶ 25. The plaintiffs alleged that Fifth Third secured a "collateral advantage" by filing the case in an Ohio court, thereby requiring the Kinslows "to employ counsel licensed in Ohio and defend an action approximately 194 miles from their home." *Id.* ¶ 26. The Kinslows also alleged that Fifth Third filed its lawsuit specifically to intimidate and coerce the Kinslows from pursuing their claims against Fifth Third, and that hundreds of other farmers in Kentucky and Tennessee had dealt with Eastern Livestock and had claims similar to the Kinslows', and the Bank's lawsuit was meant to discourage those potential plaintiffs as well. *Id.* ¶¶ 28-30.

The district court found that the law of the forum — Kentucky — governed the dispute. The court observed that the allegations in the complaint were conclusory, and that the plaintiffs' attempt

to expand on the allegations by including additional facts in the briefs was not proper. Nonetheless, even considering the additional facts, the court — observing that the abuse-of-process tort under Kentucky law requires allegations of both an ulterior purpose and some form of coercion to obtain a collateral advantage not properly involved in the proceeding itself — found that both parties had potential claims against each other arising from their involvement with Eastern Livestock, and that Fifth Third's offer to dismiss the suit in exchange for a release of the plaintiff's claims was proper in that situation. The district court also determined that Fifth Third did not abuse process by filing suit in Ohio, even though it caused a financial hardship to the plaintiffs.

The Court dismissed the lawsuit, and plaintiffs timely appealed that ruling.

II.

This court gives fresh review to the district court's decision to dismiss a case under Federal Rule of Civil Procedure 12(b)(6), affording no deference to the lower court. *American Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 709 F.3d 584, 587 (6th Cir. 2013). When evaluating a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), the court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 456 (6th Cir. 2011) (citations omitted). The "complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to

relief.'" *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 444 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)). However, "it is not enough merely to plead a set of facts 'consistent with' a claim to relief; there must also be enough 'factual enhancement' to 'nudge [the] claim[ ] across the line from conceivable to plausible.'" *Ibid.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007)). "Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As long as a court can "'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Id.* at 281 (quoting *Iqbal*, 556 U.S. at 678).

## A.

Subject matter jurisdiction over this case is based in part on diversity of citizenship, and the plaintiffs' claim arises under state law. Therefore, the court must apply the substantive law of the state's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (quoting *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985)). A dispute arose in the district court over which state's law governed; the plaintiffs advocated for Kentucky's and the defendant said it must be Ohio's. The district court determined that Kentucky law governs, but we see no need to decide the question. The elements of the tort of abuse of process under Ohio law track those prescribed by Kentucky law with the additional requirement of showing that the "legal proceeding has been set in motion in proper form

and with probable cause." *Yaklevich v. Kemp, Schaeffer & Rowe, Co., L.P.A.*, 626 N.E.2d 115, 118 (Ohio 1994). The plaintiffs concede that their complaint does not address that additional element. The choice of law does not affect our disposition, however, and for the sake of discussion, and in light of the district court's decision, we will assume without deciding that Kentucky law applies.

B.

The Kentucky Supreme Court recently has confirmed that the tort of abuse of process consists of "two essential elements: 1) an ulterior purpose, and 2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Sprint Communications Co., L.P. v. Leggett*, 307 S.W.3d 109, 114 (Ky. 2010). "[T]he gist of the tort is not commencing an action or causing process to issue without justification, but misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which the process is used, once it is issued, is the only thing of importance." *Flynn v. Songer*, 399 S.W.2d 491, 494 (Ky. 1966) (quoting Prosser, *Law of Torts* § 115 (3d ed. 1964)).

1.

The Kinslows' complaint describes the ulterior purpose behind Fifth Third's Ohio lawsuit as securing the advantage of litigating in Ohio and causing hardship for the Kinslows in also having to litigate their dispute in that forum. The allegation that Fifth Third sought to secure a "collateral advantage" surely is conclusory, but the pleaded facts — that the Kinslows had to travel 194 miles

to the Ohio court, that the lawsuit was brought after the plaintiffs demanded compensation, and that other farmers similarly situated also could be intimidated by the litigation tactic — justifies the inference that at least one purpose of filing the lawsuit and having process issue from the Ohio court was to secure to Fifth Third the advantage of litigating on its home turf and increasing the difficulty on the Kinslows in pressing their own claims. It also follows that increasing the litigation burdens on the Kinslows enhances the Bank's chances of obtaining a more favorable settlement of its competing claims and a release of the Kinslows' claims against it. And it might also discourage other potential claimants.

But those motives can hardly be characterized as "ulterior." The Kentucky Supreme Court has described an ulterior purpose as "an objective which is not a legitimate use of the process," for example, "'to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property o[r] the payment of money.'" *Sprint Communications*, 307 S.W.3d at 114 (quoting *Simpson v. Laytart*, 962 S.W.2d 392, 395 (Ky. 1998)). "Generally stated, one who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which that process is not designed, is subject to liability to the other for harm caused by the abuse of process." *Id.* at 113 (citing Restatement (Second) of Torts § 682 (1977)). Fifth Third argues that the claims asserted by it in the Ohio lawsuit and the claims held by the plaintiffs were not collateral to each other and therefore, to the extent that Fifth Third sought an advantage, the advantage was properly involved in the proceeding itself. The advantage Fifth Third allegedly sought is dissimilar

from paradigmatic examples of a collateral advantage. *See, e.g.*, *Flynn*, 399 S.W.2d at 494-95 (obtaining a warrant against an individual to coerce that individual to release a garnishment is an improper purpose); *Stoll Oil Refining Co. v. Pierce*, 337 S.W.2d 263, 266 (Ky. 1960) (holding that improper issuance of a forcible detainer without the required bond to dispossess a tenant was an improper purpose). Moreover, the advantages Fifth Third sought — choosing a forum favorable to one's self and inconvenient for the opponent, minimizing one's own litigation costs at the expense of an opponent's costs, winning the race to the courthouse and requiring the opponent to assert its position as a counterclaim — are well-recognized features of modern litigation. There is no penalty for winning the race to the courthouse if it is run within the bounds of ethics and propriety. The complaint contains no allegations that Fifth Third did anything inappropriate by filing first in Ohio.

Nor is it necessarily inappropriate to file a lawsuit with the purpose of settling related claims. *See Doctor's Associates, Inc. v. Weible*, 92 F.3d 108, 116 (2d Cir. 1996) (stating that filing a lawsuit to coerce a defendant into settling his claims "is not necessarily inappropriate"); *Wallace v. Mercantile Country Bank*, 514 F. Supp. 2d 776, 793 (D. Md. 2007) (stating that "it is not indicative of improper motivation on the part of the defendants that they sought to negotiate collectively and resolve all potential disputes surrounding the event"); *Rashidi v. Albright*, 818 F. Supp. 1354, 1359 (D. Nev. 1993) (stating that "continuing litigation as a lever to obtain personal releases from liability" does not constitute "any ulterior purpose other than resolution or settlement of the suit which is an acceptable use of process"); *but see Torok v. Yost*, 335 S.E.2d 419, 421 (Ga. Ct. App.

1985) (holding that filing a false counterclaim to attempt to compel plaintiffs to dismiss their claim was not proper). Moreover, although the plaintiffs were, as they acknowledge, barred from asserting their own claims in a Kentucky court while the Ohio lawsuit was pending, they were not barred from asserting them as counterclaims in the Ohio lawsuit. Therefore, Fifth Third did not prevent the plaintiffs from asserting their claims; it merely prevented the plaintiffs from filing their claims in the forum of their choice.

The Kinslows did not plead an "ulterior purpose" that satisfies the requirement of Kentucky law for the tort of abuse of process.

2.

The second element of a successful abuse of process claim is a willful act not proper in the regular course of proceeding. "Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of process is required and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion even though with bad intentions." *Simpson*, 962 S.W.2d at 394-95 (citing W. Prosser, *Handbook of the Law of Torts* § 121 (4th ed. 1971)).

Confining our view of the facts to the complaint and the documents referenced therein, the only actions that the plaintiffs allege that Fifth Third took was filing the lawsuit in Hamilton County, Ohio and serving WK and Roy Kinslow with process. Compl. ¶¶ 21-24. The plaintiffs assert that

those actions were not proper because the Ohio court lacked jurisdiction over them, they were forced to hire attorneys and defend an action approximately 194 miles from their home, and they were precluded from filing their own action in Kentucky. The plaintiffs additionally allege that the allegations in the Ohio lawsuit were false. *Id.* ¶ 27. The Kentucky Supreme Court recently explained that "to initiate a legal action for an improper purpose (demanding a result not authorized by applicable law) after threatening to do so unless the unauthorized result is granted" is abuse of process. *Sprint Commc'ns*, 307 S.W.3d at 119. However, the court cautioned that it did not "hold that simply filing a groundless lawsuit constitutes an abuse of process." *Ibid.*

In defending their complaint, the Kinslows argue essentially that Fifth Third's service of process upon them was an improper act because it was an attempt to force them to litigate a meritless case in a place that was inconvenient to them. As the district court correctly recognized, the fact that defending a suit in another state may have caused a financial hardship or inconvenience to the plaintiffs does not *ipso facto* render Fifth Third's service of process an improper act. The plaintiffs have not pointed to any case suggesting that filing an action and serving process can constitute a "willful act in the use of the process not proper in the regular conduct of the proceeding." *Id.* at 114. In fact, the Kentucky Supreme Court has strongly suggested that it does not. In *Simpson v. Laytart*, the Kentucky Supreme Court stated that improper conduct "usually takes the form of coercion to contain a collateral advantage . . . by the use of the process as a threat or club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, *rather than the*

*issuance or any formal use of the process itself*, which constitutes the tort." 962 S.W.2d at 394-95 (emphasis added; quotation marks omitted). And although the Kentucky Supreme Court has held that the willful act need not occur subsequent to the issuance of process, the plaintiffs have pleaded no facts in the complaint to suggest that Fifth Third did any more than "carry out the process to its authorized conclusion." *Sprint Commc'ns*, 307 S.W.3d at 114, 119 (quotation omitted).

Slightly complicating the matter is the fact that the Ohio lawsuit was dismissed for lack of personal jurisdiction. The plaintiffs argue that the improper act was commencing an action in a court that lacked personal jurisdiction over them. However, we believe that Kentucky courts would not consider that act sufficient to satisfy the second element of an abuse of process claim. Kentucky courts have declined to find that a plaintiff has stated a claim for abuse of process where the defendant has done nothing more than file a lawsuit that lacked any legal basis for the purpose of retaliation. *Sprint Commc'ns*, 307 S.W.3d at 119 (disclaiming the idea that "simply filing a groundless lawsuit constitutes an abuse of process"); *Deters v. Taliaferro*, No. 2009-CA-001344-MR, 2010 WL 3719917, at *2 (Ky. Ct. App. Sept. 17, 2010). The situation here is less extreme than filing a meritless claim: a dismissal for lack of personal jurisdiction is not an adjudication on the merits in Ohio, and a defendant may waive personal jurisdiction. *Thomas v. Freeman*, 680 N.E.2d 997, 1001 (Ohio 1997); *During v. Quioco*, 973 N.E.2d 838, 844 (Ohio Ct. App. 2012). If filing a meritless claim for the purpose of retaliation is not sufficient to constitute an improper act, it is hard to see how filing a claim that is subject to a waivable defense could constitute an improper act.

In their brief on appeal, the Kinslows allege facts not contained in their complaint. Most significantly, they allege that after Fifth Third commenced the Ohio lawsuit, Fifth Third offered to dismiss that case if the Kinslows would release all claims against Fifth Third. That allegation theoretically might lend support to the plaintiffs' abuse of process claim. But it is nowhere to be found in the complaint. Nor have the plaintiffs sought leave, either in this Court or in the district court, to amend their complaint to include that allegation. "The appropriate method for adding new factual allegations to a complaint is not via an appellate brief, but by filing an amended complaint." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 328 (6th Cir. 2006). "Allowing [the plaintiffs] to present a new theory of [their] case on appeal that was not alleged below would permit [them] two bites at the apple, a practice that would be very disruptive of orderly trial procedure." *Id*. at 329. The Court will disregard facts that the plaintiffs have alleged for the first time in their appellate brief.

III.

The plaintiffs have not pleaded facts in their complaint that establish either of the essential elements of the tort of abuse of process under Kentucky law. The district court's judgment dismissing the complaint for failure to state a claim is **AFFIRMED**.